Filed 1/23/25  In re N.E. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| In re N.E. et al., Persons Coming Under the Juvenile Court Law. | C100946 |
| TEHAMA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>       Plaintiff and Respondent,<br><br>   v.<br><br>T.B.,<br><br>       Defendant and Appellant. | (Super. Ct. Nos. 23JU000057, 23JU000058) |

T.B., father of minors N.E. and A.E., appeals from the juvenile court's orders entered at the six-month review hearing.  (Welf. & Inst. Code, §§ 300, 366.21, subd. (e), 395.)[1]  Father contends (1) the juvenile court did not find that return of the minors to parental custody would create a substantial risk of detriment, and (2) the Tehama County Department of Social Services (Department) failed to conduct an adequate inquiry into

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

the minors' possible Native American heritage under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). The Department does not oppose a limited remand to ensure compliance with ICWA.[2]

We will vacate the juvenile court's September 6, 2023 preliminary finding that ICWA does not apply and remand the matter for further ICWA compliance proceedings. We will otherwise affirm the challenged orders.

BACKGROUND

In June 2023, the Department removed the minors (born in May 2019 and February 2018) from their mother's custody. It was noted at the time that the minors may be members of, or eligible for membership in, the Mechoopda Indian Tribe of the Chico Rancheria. The minors were detained, and the juvenile court ordered father to have visitation with the minors three times a week, up to five hours total.

Prior to the jurisdiction/disposition hearing, the Department reported that mother's adult daughter had cared for the minors for most of their lives, until a few months prior to their removal. Father was present at the birth of the minors but did not have custody of them. At the time of the Department's report, father was seeking custody of the minors, but he believed visitation center staff members were biased against him. Visitation center

---

[2] The Department notes that father's notice of appeal was broader than the issues asserted in his appellant's opening brief. Father filed the notice of appeal without counsel on April 17, 2024. Although he checked various boxes and hand-wrote additional concerns on the form, he indicated the only order from which he was appealing was the six-month review order, issued on April 9, 2024. And the only issues asserted in appellant's opening brief relate to the six-month review order. We construe the appeal to be from the six-month review order. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 75-76 [when it is reasonably clear what appellant was trying to appeal from, we liberally construe the notice of appeal in favor of its sufficiency]; see Cal. Rules of Court, rules 8.100(a)(2), 8.405(a)(3).) As so construed, the notice of appeal, filed eight days after issuance of the six-month review order, was timely. (See Cal. Rules of Court, rule 8.406(a)(1).)

staff reported that father had a hard time caring for the minors and maintaining his emotions when the minors would run out of the room or jump on furniture. As for ICWA, the Department reported that it may apply.

At the contested disposition hearing on September 6, 2023, the mother was bypassed for services. The juvenile court found father to be the presumed father and found by clear and convincing evidence that placement with either parent would be detrimental to the minors. The minors would remain in foster care and father would continue to have supervised visitation. The juvenile court ordered the Department to contact the tribes and calendar the matter if ICWA applied, but preliminarily concluded that without more information, ICWA did not apply.

During the reunification period, father submitted to a psychological evaluation conducted by Dana R. Anderson, PsyD. Dr. Anderson determined, among other things, that father had a polysubstance addiction and a history of heroin, opioid, THC, and other substance use that father did not want to discuss. Father said he previously took Lithium as a mood stabilizer.

At the time of his evaluation, father was taking 145 milligrams of methadone daily and smoking approximately 0.03 milligrams of THC. Dr. Anderson noted that father began smoking marijuana during his remote assessment. Father was advised not to smoke marijuana during the psychological assessment, but father indicated he could not wait.

During the assessment, Dr. Anderson observed father to be "manic, with an elevated mood and poor distractibility and impulse control." Dr. Anderson believed father was "underreporting and minimizing his past drug use." Dr. Anderson diagnosed father with histrionic personality disorder along with a turbulent and narcissistic personality style. According to Dr. Anderson, father's personality style aligned with an impulsive lifestyle.

In its February 27, 2024 status review report, the Department recommended the minors remain under the jurisdiction of the juvenile court and that father continue with reunification services. The Department noted Dr. Anderson's conclusion that father's personality disorders and substance abuse did not demonstrate sufficient emotional stability to care for the minors. The Department also expressed concern about the amount of methadone father was using. Father tested 13 times during the reunification period and repeatedly tested positive for either methadone or THC. As a result, father was not in compliance with the court-ordered case plan.

The Department recommended that the minors remain under the juvenile court's jurisdiction. The Department was concerned with father's inability to provide day-to-day care for the minors, who had high needs, and his unwillingness to accept diagnoses. The Department further recommended that father address his substance abuse, titrate off methadone medication, receive drug and alcohol related services, and begin medication-assisted treatment. Additionally, the Department recommended that father continue to seek counseling and medication management to address his mental health. Finally, the Department recommended continued family therapy and an additional parenting course to help father bond with the minors, increase his parenting skills, and show his acceptance of the minors' developmental delays and medical needs.

At the six-month review hearing, the juvenile court denied section 388 petitions and then determined that the minors would not yet be placed in father's custody because he had not established that he could parent them. The juvenile court said father lacked insight into his behavior, and his behavior could be harmful to the minors. The juvenile court expressed concern about father's mental health and told father more information was needed from his care providers to assess his fitness for parenting. Before the minors could be placed with him, father also needed to address his polysubstance abuse diagnosis by starting a program. Father asked the juvenile court if he would have to stop using methadone and suboxone to have the minors placed with him. The juvenile court

said that was not necessarily required but the juvenile court and the Department needed more information about father's methadone use and how it may impact his ability to parent the minors.

The written findings and order after hearing were filed on April 22, 2024. The juvenile court found that father had made minimal progress toward reunification, the minors' current placement was appropriate, and their needs were being met. The juvenile court also found by a preponderance of the evidence that the return of the minors to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the minors.

DISCUSSION

I

Father contends the juvenile court did not find that return of the minors to parental custody would create a substantial risk of detriment.

Section 366.21 provides that at the six-month review hearing, the juvenile court, after considering the admissible and relevant evidence, "shall order the return of the child to the physical custody of their parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e)(1).) The statute further requires the juvenile court to "specify the factual basis for its conclusion that the return would be detrimental or would not be detrimental." (§ 366.21, subd. (e)(2).)

Here, in the written findings and order after hearing, the juvenile court found that returning the minors to father would create a substantial risk of detriment to the minors. The juvenile court added that the factual basis for its finding was stated on the record, and we conclude the record sufficiently supports the juvenile court's determination.

At the six-month review hearing, the juvenile court indicated father had not established he could parent the minors, he lacked insight into his own behavior, and his

5

behavior could harm the minors. The juvenile court noted that father had ignored the direction of visitation center staff, and it expressed concern about father's mental health and history of drug use. The juvenile court said father had made minimal progress in the reunification plan. The juvenile court made the necessary finding of detriment and sufficient evidence supports the finding.

## II

Father also contends the Department failed to conduct an adequate ICWA inquiry. The Department does not oppose a limited remand to ensure compliance with ICWA.

We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (§ 224.2, subd. (i)(2); *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 961; *In re Dezi C.* (2024) 16 Cal.5th 1112, 1134.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C.*, at p. 1141.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101-1102.)

At the disposition hearing in September 2023, the juvenile court made a preliminary finding that without further information, ICWA did not apply. But the record lacks adequate information to determine whether a sufficient ICWA inquiry has been made. Accordingly, we will vacate the September 6, 2023 preliminary finding that ICWA does not apply and remand the matter for further ICWA compliance proceedings.

## DISPOSITION

The juvenile court's September 6, 2023 preliminary finding that ICWA does not apply is vacated and the matter is remanded for further ICWA compliance proceedings, after which the juvenile court shall enter a new ICWA finding. If the minors are found

to be Indian children, the juvenile court shall proceed in compliance with ICWA, including considering any petition filed to invalidate prior orders. (25 U.S.C. § 1914; § 224, subd. (e).) The challenged orders are otherwise affirmed.


_____/S/_____
MAURO, J.


We concur:


_____/S/_____
HULL, Acting P. J.


_____/S/_____
BOULWARE EURIE, J.


7